**In the United States District Court for the District of Kansas**

Case No. 21-cv-03088-TC

ERNEST L. TAYLOR,

*Plaintiff*

v.

TIM EASLEY,

*Defendant*

**MEMORANDUM AND ORDER**

Ernest Taylor was convicted of aggravated burglary, aggravated robbery, and obstruction of official duty. *State v. Taylor*, No. 101,451, 2010 WL 2245599, at *1 (Kan. Ct. App. May 28, 2010). He filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 on grounds of ineffective assistance of trial and appellate counsel. Doc. 1. For the following reasons, Taylor's petition is denied.

**I**

**A**

The following standard governs resolution of Taylor's petition. And his petition is subject to certain standards that apply only to pro se plaintiffs.

**1.** Over the centuries, several writs of habeas corpus evolved at common law. *See Ex parte Bollman*, 4 Cranch 75, 97–98 (1807); 3 W. Blackstone, *Commentaries on the Laws of England* 129–31 (1768). The most significant of these was the *writ of habeas corpus ad subjiciendum*, the so-called Great Writ. 3 W. Blackstone, *Commentaries* at 131. Common law courts employed the writ to force English monarchs to explain their capricious fancies, and to correct them when necessary. *Brown v. Davenport*, 596 U.S. 118, 128 (2022). In this way the Great Writ was

"the instrument by which due process could be insisted upon." *Hamdi v. Rumsfeld*, 542 U.S. 507, 555 (2004) (Scalia, J., dissenting).

The tradition persisted in the American colonies. It was codified in the Suspension Clause of the Constitution, which provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. The Clause does not create a privilege, but rather recognizes the existence of one. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 116 (2020). In 1789, the Congress granted federal courts the authority to issue the writ of habeas corpus against the Federal Government. *Stone v. Powell*, 428 U.S. 465, 474–75 (1976). This was followed by an extension of the writ to state prisoners in 1867. *Id.* at 475. Over the years, the Supreme Court has repeatedly "emphasized the fundamental importance of the writ of habeas corpus in our constitutional scheme, and the Congress has demonstrated its solicitude for the vigor of the Great Writ." *Johnson v. Avery*, 393 U.S. 483, 485 (1969).

But the writ was not without limits. At common law, prisoners could not use it to challenge a final judgment issued by a court of competent jurisdiction. *Brown*, 596 U.S. at 128. Courts saw trials as inherent evidence that a defendant had received due process. *Id.* In *Ex parte Watkins*, Chief Justice Marshall noted: "[A] court can undoubtedly inquire into the sufficiency of [a judgment]; but if it be the judgment of a court of competent jurisdiction, especially a judgment withdrawn by law from the revision of this court, is not that judgment in itself sufficient cause?" *Ex parte Watkins*, 28 U.S. 193, 202 (1830). The view was that "[m]ere error in the judgment or proceedings, under and by virtue of which a party is imprisoned, constitutes no ground for the issue of the writ." *Ex parte Siebold*, 100 U.S. 371, 375 (1879). Thus, courts could examine "only the power and authority of the court to act, not the correctness of its conclusions." *Harlan v. McGourin*, 218 U.S. 442, 448 (1910).

And in our system of dual sovereignty, where most aspects of criminal law are administered in state courts, concerns of comity, federalism, and finality urge caution. *See generally Duncan v. Walker*, 533 U.S. 167, 178–79 (2001). Reflective of those concerns, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which governs petitions for writs of habeas corpus from state courts. 28 U.S.C. § 2254; *Harrington v. Richter*, 562 U.S. 86, 97 (2011); *Martinez v. Quick*, 134 F.4th 1046, 1055 (10th Cir. 2025). "Because federal

habeas review overrides the States' core power to enforce criminal law, it 'intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority.'" *Shinn v. Ramirez*, 596 U.S. 366, 376 (2022) (quoting *Harrington*, 562 U.S. at 103); *see also Kansas v. Garcia*, 589 U.S. 191, 212 (2020) ("From the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today.").

AEDPA therefore limits when federal courts may grant state prisoners habeas relief. Federal courts may not grant habeas relief unless the state's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law [or] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is contrary to clearly established law "if it applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts." *Underwood v. Royal*, 894 F.3d 1154, 1162 (10th Cir. 2018) (quoting *Lockett v. Trammell*, 711 F.3d 1218, 1231 (10th Cir. 2013)). And it involves an unreasonable application of federal law "if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of petitioner's case." *Id.* (quoting *Lockett*, 711 F.3d at 1231).

State courts' factual determinations are "presumed to be correct." 28 U.S.C. § 2254(e)(1). A defendant challenging a state court's finding has the burden of rebutting this presumption by "clear and convincing evidence." *Id.* Furthermore, federal courts are bound by state courts' interpretation of state law. *See Sumpter v. Kansas*, 61 F.4th 729, 741 (10th Cir. 2023) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)) ("[A] state court's interpretation of state law binds a federal court sitting in habeas corpus.").

**2.** When a plaintiff, such as Taylor, proceeds pro se, a court must construe his or her pleadings and other papers generously. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009); *accord Childers v. Crow*, 1 F.4th 792, 807–08 (10th Cir. 2021) (construing a pro se litigant's habeas petition to discern the petitioner's intent). That generosity means a court should overlook the failure to properly cite legal authority, confusion of various legal theories, and apparent unfamiliarity with pleading requirements. *Smith*, 561 F.3d at 1096. But it does not permit a court to construct legal theories on the plaintiff's behalf or

assume facts not plead. *See id.*; *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

### B

Taylor, following trial, direct appeals, and state post-conviction efforts, filed his petition for writ of habeas corpus in federal court. The following describes the circumstances leading to the filing of his petition.

#### 1

In 2007, a young woman in Topeka discovered a man standing approximately ten to twelve feet from her bed. *Taylor v. State*, No. 121,008, 2020 WL 4722823, at *1 (Kan. Ct. App. Aug. 14, 2020). The man was hunched over with his hand under his shirt, which caused the woman to believe he had a gun. *Id.* He demanded her wallet or else he would shoot her. *Id.* She yelled at him to leave, telling him that she did not have a wallet. *Id.* The man fled, taking a jar of nickels and dimes on his way out. *Id.*

After the incident, the woman called police and provided a description of the man. *Taylor*, 2020 WL 4722823, at *1. She described him as a "black man, 5'8" to 5'10," weighing 170 to 190 pounds, with short hair and a mustache, who was wearing a white t-shirt with some writing on the front of it." *Id.* Two sheriff's deputies in the area received a radio dispatch describing the man and proceeded toward the victim's house. *Id.* While en route, they spotted a man fitting the alleged assailant's description a few blocks from the victim's house. *Id.* The deputies, who were dressed in street clothes, drove past the man, turned their car around, parked it, and approached the man on foot. *Id.* After the man refused to respond to the deputies' requests to talk, they used a taser on him. *Id.* The deputies arrested the man, who was later identified as Ernest Taylor, and discovered $41.05 in coins on his person. *Taylor*, 2020 WL 4722823, at *1. When detectives showed the victim a photo array including Taylor's photo, she pointed him out in thirty seconds and said, "that looks like him." *Id.* Sometime later, she watched a video of Taylor in an interview room, but she could not see his face. *Id.* Based on the sound of his voice, she told detectives she was "120 percent sure" Taylor was the intruder. *Id.*

**2**

The State of Kansas charged Taylor with aggravated robbery, aggravated burglary, and obstructing official duty. *Taylor*, No. 101,451, 2010 WL 2245599, at *2 (Kan. Ct. App. May 28, 2010). Eventually, the district court held a four-day jury trial and the jury convicted him on all counts. *Id.* The state court sentenced Taylor to 281 months in prison. Doc. 1 at 1.[1]

Taylor appealed. *Taylor*, 2010 WL 2245599. The Kansas Court of Appeals upheld his convictions. *Id.* The Kansas Supreme Court declined to review. *State v. Taylor*, 2011 Kan. LEXIS 562 (Kan. Nov. 4, 2011).

Taylor then filed a motion for post-conviction relief in state court. The district court held a hearing and denied relief. The Kansas Court of Appeals affirmed. *Taylor*, 2020 WL 4722823, *rev. denied* Mar. 18, 2021. The Kansas Supreme Court declined to review.

**3**

Taylor then filed a petition for a writ of habeas corpus in federal court. His petition concerns various ineffective assistance of counsel claims against his trial and appellate counsel. The following describes the relevant factual history giving rise to Taylor's claims and then identifies the specific claims he makes in support of his request for habeas relief.

Taylor brings three ineffective assistance claims against his appellate counsel based on a competency evaluation that he did not want. The circumstances surrounding Taylor's competency evaluation help contextualize Taylor's arguments.

**a**

Taylor had three court-appointed trial attorneys before the pretrial hearings that resulted in Taylor's competency evaluation. Doc. 62-7 at 10. Taylor's first attorney, Tom Bartee, withdrew from the case on September 24, 2007. *Id.* at 12. His second attorney, Joe Huerter,

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

withdrew on October 16, 2007. *Id.* at 13. Then, at a hearing on November 19, 2007, Taylor's third court-appointed attorney, Kathleen Ambrosio, informed the district court that she had a scheduling conflict with the trial date. *Id.* at 10. The court held hearings on November 19 and November 21 to address the issues Ambrosio raised. *See* Docs. 62-7 & 62-25.

At the November 19 hearing, Ambrosio informed the district court that she had a scheduling conflict and that she needed more time to prepare for trial. *See* Doc. 62-7 at 10, 27. Taylor then expressed his desire to proceed pro se. Ambrosio explained the risks of proceeding pro se and the district court noted that Taylor's charges potentially carried a long sentence in light of his criminal history. *See id.* at 6–10. Taylor responded that he was concerned that his previous court-appointed attorneys were trying to "sell [him] out" and that he intended to enforce his original speedy trial timeline, which ended on December 5. *See id.* at 9, 21. Taylor ultimately decided that he could not decide whether to proceed pro se or with counsel.

The district court also noted its concern that the current trial timeline may not give Taylor a full and fair trial. *See* Doc. 62-7 at 13–15. Taylor explained that he felt "lost" about what was going on because he had not read the police report before his preliminary hearing and he had tried to address these issues with the court at the hearing. *Id.* at 13–14. The court then expressed its concern that if Taylor did not understand what was going on at the preliminary hearing, that issue would be "much deeper" at trial. *Id.* at 14. Taylor replied, "you're probably right." *Id.* His response prompted the court to explain the current state of play: Taylor's speedy trial deadline was coming up on December 5 and, although the state was ready to proceed to trial, Ambrosio had been recently appointed to the case and was not ready to proceed to trial, which presented ineffective assistance concerns. *See id.* at 14–15.

In light of the issues Ambrosio raised, the district court informed Taylor that he would need to decide whether he wanted Ambrosio to represent him or if he wanted to represent himself. Doc. 62-7 at 21. At the end of the hearing, the district court clarified that Taylor needed to first decide whether he wanted Ambrosio to represent him so they could address whether to appoint new counsel. *See id.* at 32. Taylor perceived this as the district court forcing him to choose between his constitutional right to competent and prepared counsel and his right to a speedy trial. *See id.* at 21. The court gave Taylor until November 21 to decide whether to proceed with Ambrosio. Doc. 62-7 at 33.

The district court held another hearing on November 21 to discuss how Taylor wanted to proceed. The district court explained that it was Taylor's decision whether he wanted to enforce the original speedy trial deadline or provide his attorney—who had been appointed on October 16, 2007—time to prepare for trial. *See* Doc. 62-25 at 22; *see also* Doc. 62-28 at 20. Taylor responded in two ways. First, he said he was not going to waive his speedy trial rights. *See id.* at 23. Second, he said he did not believe that Ambrosio or any other attorney would be prepared to represent him at trial on November 28. *See id.* at 24. Based on Taylor's responses, the court said it would proceed with the November 28 trial date, grant Ambrosio's motion to withdraw from the case, and try to find an attorney who could be standby counsel for Taylor. *See id.* Taylor replied, "put[ting] on the record that this Court is forcing me to go into trial by myself." *Id.* The court rejected Taylor's characterization of the issue and told the parties that it would appoint an attorney and then Taylor could choose whether to use that attorney or represent himself. *See id.* at 25. Then, on November 26, 2007—two days before the trial—the district court appointed a fourth trial attorney, Richard Lake, to represent Taylor. *See* Doc. 62-8 at 2; *see also* Doc. 62-28 at 71.

The trial was to begin on November 28, but the district court held a hearing instead of proceeding to trial. At that hearing, Lake requested a competency hearing. *See* Doc. 62-8 at 2–3. Taylor objected, arguing that Lake was his standby counsel and was not authorized to request a competency evaluation. *See* Doc. 62-8 at 3. The district court rejected Taylor's argument, stating that it had appointed Lake as Taylor's counsel and had not "released him from this case." *Id.* at 3–4; *see also* Doc. 62-29 at 27. Lake provided his reasons for requesting the exam. He noted that Taylor's first attorney, Bartee, requested a competency exam on September 6, 2007, because he believed Taylor had a mental illness. *Id.* at 5. This was because Taylor had expressed to Bartee that some of his family members had recently died and that he was under significant stress, and Taylor remained under significant stress even though he was taking antidepressants. *Id.* at 4. Lake also noted that Ambrosio questioned Taylor's competency because Taylor told her that "he had defenses that he could not share with her; he didn't trust her; that he had an investigation that needed to be done, but he couldn't share that or trust her with that." *Id.* at 5. Based on these observations and his own—where he described Taylor's behavior as "erratic" at best—Lake believed that Taylor was incompetent because he was "unable to do properly what is required." *Id.* at 6. The court granted Lake's request. *Id.* at 9–10. In granting the request, the court explained that it became

concerned about Taylor's competency when Taylor refused to answer "relatively simple questions or provide answers" to the court's questions. Doc. 62-8 at 12.

But after the district court ordered the competency evaluation, Lake's opinion changed on the matter. On January 15, 2008, Lake filed an affidavit stating that his request for the psychological evaluation denied Taylor his right to a speedy trial. *See* Doc. 62-28 at 85, ¶ 8. In particular, Lake explained that he was appointed to represent Taylor two days before the "looming trial date," so he requested the evaluation "with an abundance of caution" after a "hasty review" of Taylor's case file where he briefly learned about the facts of the case and that previous attorneys had requested a competency exam. *Id.* at ¶¶ 4–5. Lake then moved to withdraw from the case on February 7, 2008, *id.* at 75, and was permitted to withdraw on March 13, 2008. *See* Doc. 62-29 at 98. On March 13, 2008, the district court appointed Jonathan Phelps—the fifth trial lawyer—to represent Taylor. Doc. 62-29 at 9.

Phelps was Taylor's attorney from March 13, 2008, to June 12, 2008. During that time, the district court held a competency hearing on April 3, 2008. *See* Doc. 62-29 at 127. The district court found Taylor competent to stand trial; resumed the speedy trial clock, which set the deadline for July 2, 2008; and set the trial for June 30, 2008. *Id.* at 128. Then, on June 5, 2008, Phelps learned Taylor had just filed a request that Phelps withdraw from the case. *See* Doc. 62-31 at 75–76. In response, Phelps filed a motion to withdraw as attorney. *See id.*

On June 12, 2008, the district court held an ex parte hearing with Taylor and Phelps to discuss the motions. *See id.* at 88. The district court asked the State's representatives to leave the courtroom and conducted an inquiry under seal. *See id.* Based on the inquiry, the district court permitted Phelps to withdraw and, the next day, appointed John Kerns to represent Taylor. *See id.* at 89.

Before trial, Taylor filed two motions to dismiss based on purported violations of his Kansas statutory speedy trial rights stemming from the competency evaluation. One was a pro se motion filed on January 28, 2008, *see* Doc. 62-5 at 16, and the other was a motion filed by Phelps on April 18, 2008. *See* Doc. 62-5 at 16, 25; *see also* Doc. 62-2 at 179. In the motions, Taylor asserted that time excluded from the speedy trial clock related to the competency exam should not be attributed to him for speedy trial purposes because Lake was standby counsel and thus lacked authority to request a competency exam in the

first place. *See* Doc. 62-18 at 65; *see also* Doc. 62-8 at 12–13 (granting the continuance and noting that the time will be excluded from the statutory speedy trial clock). The district court denied those motions, detailing the various competency issues raised throughout the pretrial proceedings and its ultimate conclusion to grant the continuance to order an evaluation. *See id.*

Kerns, by this time Taylor's sixth attorney, represented Taylor at trial. *See generally* Docs. 62-21, 62-22, 62-23, 62-24. Before the trial, Taylor filed motions to suppress the victim's pretrial identifications from a photo array and evidence seized when officers detained him, arguing that the officers lacked reasonable suspicion to detain him. *See* Doc. 62-2 at 177. The district court held an evidentiary hearing and subsequently denied those motions, too. *See id.*

At trial, the defense's theory was that the victim had misidentified Taylor as the suspect. *See id.* But the State presented evidence that the officers seized coins from Taylor's person when he was taken into custody and that the victim had previously identified Taylor during a six-person lineup. *See id.* Kerns did not object to any of the State's evidence that was the subject of the motion to suppress. *See id.* As noted, the jury found Taylor guilty on all counts. *Taylor*, 2010 WL 2245599, at *2.

**b**

Taylor appealed that decision to the Kansas Court of Appeals. *Taylor*, 2010 WL 2245599. Rachel Pickering represented Taylor on direct appeal.[2] Taylor asserted eight claims on direct appeal, but only three are relevant to his federal habeas petition.

Two claims stem from the district court's denial of Taylor's motion to suppress. *See Taylor*, 2010 WL 2245599, at *2–*3. The first claim goes to the evidence obtained pursuant to Taylor's initial detention—which Taylor contended was an unlawful stop—including the stolen coins law enforcement found in Taylor's possession. *Id.* The second concerns the pretrial lineup identification. *Id.* The Kansas Court of

[2] Pickering has been subsequently nominated and confirmed as a member of the Kansas Court of Appeals. *See Judge Rachel Pickering to be sworn in as Kansas Court of Appeals judge April 27*, https://kscourts.gov/Newsroom/News-Releases/News/2023-News-Releases/April-2023/Judge-Rachel-Pickering-to-be-sworn-in-as-Kansas-Co (last visited July 16, 2026).

Appeals concluded that Taylor's trial counsel, John Kerns, had failed to preserve either issue for appellate review because he did not object when the trial court admitted the evidence. *Id.* at *3. Thus, it declined to consider the initial detention issue. *Id.* It nonetheless went on to consider the line-up issue and concluded that "any perceived illegality in the line-up procedures was clearly harmless" because the officers found the stolen coins on Taylor's person after apprehending him a few blocks from the victim's residence as a result of a search incident to arrest that Taylor never separately challenged. *Id.* at *4.

And the third claim was that his pretrial attorney, Richard Lake, was ineffective for requesting a competency evaluation because it prejudiced his right to a speedy trial. *Id.* at *6. The Kansas Court of Appeals held that Lake was not ineffective because the record supported a reasonable belief that Taylor needed a competency exam because he was refusing to assist in his own defense. *Id.* at *7. And in any event, Taylor's claim was "based on a false premise as to prejudice" because the competency proceedings paused the statutory speedy trial clock, but did not relieve the State of its obligation to bring Taylor to trial within the statutory period—properly calculated with appropriate periods of time excluded—as set forth in Kan. Stat. Ann. § 22-3402(5)(a); *id.* at *7. The Kansas Supreme Court declined to review. *State v. Taylor*, 2011 Kan. LEXIS 562 (Kan. Nov. 4, 2011).

**c**

Taylor then filed a motion for post-conviction relief pursuant to Kan. Stat. Ann. § 60-1507. *Taylor*, 2020 WL 4722823. He argued that Kerns was ineffective for failing to preserve his suppression issue that the officers lacked reasonable suspicion to detain him. *Id.* at *2. He also argued that he was pro se when Lake requested the competency evaluation. *Id.* at *5. After a preliminary hearing, the district court denied Taylor's motion. *Id.* at *2.

Taylor appealed that decision to the Kansas Court of Appeals. *Taylor*, 2020 WL 4722823. He asserted five claims, four of which are relevant to his federal habeas petition. The Kansas Court of Appeals affirmed the district court's findings. It concluded that Kerns's performance did not prejudice Taylor because, in reviewing the facts and testimony from trial, it was unlikely to reverse the suppression issue had Kerns preserved it. *Id.* at *2. It also concluded that the district court's factual finding that Taylor was not pro se when Lake requested a competency exam was supported by substantial competent evidence. *Id.* at

*5. And the Kansas Court of Appeals concluded that Taylor's two remaining issues—that Lake had no authority to request the competency evaluation, and that Taylor's competency evaluation was erroneous because he objected to it— were barred by res judicata because they were decided on direct appeal. *Id.* at *5. The Kansas Supreme Court denied review. *Taylor*, 2020 WL 4722823, *rev. denied* Mar. 18, 2021.

**d**

Taylor now brings a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. He asserts five ineffective assistance of counsel claims, two against his trial attorney, John Kerns, and three against his appellate attorney on direct appeal, Rachel Pickering.[3]

The habeas petition asserts Kerns was ineffective in two ways. Taylor first argues that Kerns failed to preserve the suppression issues for appeal, the same argument he made in his Kansas post-conviction motion. Doc. 1 at 6, 18. Taylor also asserts, for the first time in his federal habeas petition, that Kerns was ineffective for failing to call certain witnesses at trial. Doc. 1 at 6, 18.

It also contends that Pickering was ineffective in three ways. These include her failure to argue that the district court violated his speedy trial rights by ordering a competency exam, failure to argue that the district court erred in granting the competency exam, and failure to argue that the district court forced Taylor to choose between his constitutional rights to a speedy trial and to counsel. Doc. 1. And his

[3] Taylor raised two other grounds in his petition. *See* Doc. 1. Upon screening Taylor's motion to proceed in forma pauperis, Senior United States District Judge Sam Crow directed Taylor to advise whether he wanted to dismiss unexhausted Grounds Six and Seven because they had not been presented on either direct appeal or post-conviction relief. *See* Docs. 4 & 5. At Taylor's request, Judge Crow stayed this matter and held it in abeyance so Taylor could return to state court to exhaust Grounds Six and Seven. *See* Docs. 12 & 13. But after the state-court proceedings concluded and Taylor submitted a supplemental brief relating to Grounds Six and Seven, *see* Docs. 44, 53, 54, United States District Judge John Lungstrum directed Taylor to explain why Grounds Six and Seven should not be dismissed as procedurally defaulted. Doc. 45. After several orders requesting such information, *see* Docs. 53 & 55, Judge Lungstrum dismissed Grounds Six and Seven with prejudice as procedurally defaulted. Doc. 57. As a result, only Grounds One through Five remain. *See* Doc. 57.

speedy trial argument appears to invoke both state statutory and Sixth Amendment grounds, so it is effectively two separate contentions. That distinction matters: Although he has previously asserted the state statutory basis for his claim, his federal habeas petition is the first time that he has asserted the Sixth Amendment speedy trial claim. And he raises the "forced-choice" argument for the first time here. *See id.* at 5, 8–9.

**II**

Taylor brings five ineffective assistance claims—which rest on six distinct arguments—against his trial and appellate counsel. Three of the arguments are denied as procedurally barred because Taylor did not properly exhaust them under Kansas law, and the three that have been properly preserved fail as a matter of law. Accordingly, Taylor's petition is denied.

**A**

The State argues federal habeas review is unavailable as to several of Taylor's ineffective assistance arguments because they were not properly exhausted. Doc. 61 at 2–3. In particular, this applies to Taylor's arguments about Kerns's failure to call certain witnesses, Pickering's failure to raise a Sixth Amendment speedy trial argument, and Pickering's failure to raise a forced-choice argument. Applying the procedural default rule requires rejection of those portions of Taylor's petition.

**1**

Under 28 U.S.C. § 2254(b)(1)(A), a federal court may not grant habeas relief to a state prisoner unless he "has exhausted the remedies available in the courts of the State." *See Fontenot v. Crow*, 4 F.4th 982, 1018 (10th Cir. 2021). This exhaustion doctrine is rooted in federal-state comity and is designed to avoid the unseemly result of a federal court upsetting a state court conviction without first affording the state courts an opportunity to correct a constitutional violation. *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022).

Exhaustion occurs when a state prisoner's claim goes through "one complete round of the State's established appellate review process, giving the state courts a full and fair opportunity to correct alleged constitutional errors." *Fontenot*, 4 F.4th at 1019 (quotation marks omitted).

This requires a claim to be "fairly presented" to the state court. *Id.* The crucial inquiry is "whether the substance of the petitioner's claim has been presented to the state courts in a manner sufficient to put the [state] courts on notice of the federal constitutional claim." *Id.*

The State's contention acknowledges that Taylor's habeas petition presents some claims that have been exhausted and others that have not. Courts refer to those petitions as "mixed." *Jones v. Bock*, 549 U.S. 199, 221 (2007).

When faced with a mixed petition, a federal district court has four options. *Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009). First, it may dismiss the entire petition. *See id.* at 1156. Second, the district court may, if it determines that the petitioner had good cause for failing to meet the exhaustion requirement and the claims are not meritless, stay the petition in abeyance while the petitioner returns to state court. *Id.* Third, the district court may determine that the unexhausted claims would be procedurally barred in state court and "instead of dismissing the entire petition, the court can deem the unexhausted claims procedurally barred and address the properly exhausted claims." *Fontenot*, 4 F.4th at 1019; *see also Wood v. McCollum*, 833 F.3d 1272, 1274 (10th Cir. 2016) ("A district court may not dispose of a mixed petition in a hybrid fashion by adjudicating the exhausted claims on the merits and dismissing the unexhausted claim(s) without prejudice."). Finally, the court may disregard the exhaustion requirement and address the petition on the merits. 28 U.S.C. § 2254(b)(2).

**2**

The third option is best here. It is plain that Taylor's unexhausted claims would be barred in Kansas courts.

**a**

In this federal habeas action, Taylor argues that his trial counsel, Kerns, was ineffective because he failed to call certain witnesses. Doc. 1 at 18. In particular, Taylor argues that he asked Kerns to call the victim's upstairs neighbor, the victim's therapist, and two officers. *See id.* He asserts that the victim shared her version of the events with her upstairs neighbor the day of the robbery and with her therapist shortly thereafter. *See id.* He contends that the neighbor's and the therapist's testimony as to what the victim shared with them would undermine the victim's testimony. *See id.* He also argues that he subpoenaed two

officers—"Officers Leone and Hochard"—to testify but that Kerns failed to call either to testify. *Id.* Taylor asserts that the officers' testimony would have also "contradicted other cru[cial] evidence and testimony that would have changed the outcome of the trial." *Id.*

Taylor's claim against Kerns was not fairly presented to the state court. Neither his direct appeal nor his state post-conviction motion contained this argument. *See generally Taylor*, 2010 WL 2245599; *Taylor*, 2020 WL 4722823. As a result, this claim has not been exhausted. *See Davis v. Sharp*, 943 F.3d 1290, 1296 (10th Cir. 2019) (affirming the district court's conclusion that petitioner's claims were unexhausted because he "never presented such claims in state court, either on direct appeal or in his postconviction application").

Yet giving Taylor an opportunity to return to state court would be futile. In other words, if Taylor were to return to state court to fully exhaust these claims, Kansas law would deem his petition untimely. *See* Kan. Stat. Ann. § 60-1507(f)(1)(C) (setting a limit of one year from the state supreme court's denial of review to file a post-conviction petition); *Taylor*, 2020 WL 4722823, *review denied* (Mar. 18, 2021). In addition, he could not avoid that result by filing another post-conviction motion: Kansas law bars petitioners from filing a second post-conviction motion that seeks similar relief as his or her first motion. Kan. Stat. Ann. § 60-1507(c). This conclusion—that the claim would be procedurally barred under state law if Taylor returned to state court to exhaust it—is what is known as an anticipatory procedural bar. *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014).

Generally speaking, federal courts may not consider claims subject to the anticipatory procedural bar. *Frost*, 749 F.3d at 1231 (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Two limited exceptions exist. One is if the prisoner establishes sufficient cause for failing to raise the claim and resulting prejudice. *Coleman*, 501 U.S. at 750. Cause requires showing "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Shinn v. Ramirez*, 596 U.S. 366, 379 (2022) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

The other arises where denying review would result "in a fundamental miscarriage of justice because the petitioner has made a 'credible' showing of actual innocence." *Frost*, 749 F.3d at 1231; *accord Fontenot v. Crow*, 4 F.4th 982, 1029–30 (10th Cir. 2021); *Fontenot*, 4 F.4th at 1030. Although the petitioner is not required to conclusively exonerate

himself, he or she must show that the new evidence would make it "more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536–37 (2006) (internal quotation marks and citation omitted). This exception is "rare"; neither speculation nor evidence that merely raises questions about a witness's credibility satisfies it. *Fontenot*, 4 F.4th at 1031; *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021); *Frost*, 749 F.3d at 1232.

Taylor makes an actual innocence claim in an effort to avoid the anticipatory bar. *See* Doc. 69 at 7. That argument fails. For one thing, his argument is based on pure speculation and hope. He speculates that the victim's therapist and the victim's upstairs neighbor could have information about the suspect's identity because both of them knew about the robbery, and if either of them had that information, it might conflict with the victim's description of the suspect. *See id.* at 7–8. And with that conflict, of course, Taylor further speculates that the jury might not have convicted him. That will not do. *See Powell*, 7 F.4th at 927 ("An actual innocence claim must be based on more than the petitioner's speculations and conjectures."). And for another, the evidence—at best—would only help challenge the victim's credibility. Challenging a victim's credibility falls far short of establishing actual innocence. *Frost*, 749 F.3d at 1232 (concluding that new evidence that would cast doubt on witness credibility does not necessarily satisfy the actual innocence standard).

Put simply, Taylor has not come close to satisfying his heavy burden of demonstrating actual innocence. As a result, his argument that Kerns was ineffective for failing to call certain witnesses at trial is dismissed because it is procedurally barred.

**b**

Taylor also argues that Pickering was ineffective on direct appeal in two ways. First, he claims that she failed to argue that the district court violated his Sixth Amendment right to a speedy trial by ordering a competency evaluation over his objection. Doc. 1 at 5. Second, he asserts that Pickering did not argue that the district court forced him to choose between his constitutional right to a speedy trial and his constitutional right to counsel. *Id.* at 9. The procedural bar precludes both claims.

**i**

Taylor argues that the continuance for the competency evaluation tolled the speedy trial period and the tolling should not be attributed to him for speedy trial purposes. *See id.* Taylor raised this issue in the context of his Kansas statutory speedy trial right on direct appeal and again in his post-conviction motion. *See Taylor*, 2010 WL 2245599; *see also Taylor*, 2020 WL 4722823. But Taylor never asserted in either of the proceedings that the Sixth Amendment was the basis for his argument. As a result, the state court on direct appeal analyzed the state speedy trial statute, K.S.A. § 22-3402(5)(a), when concluding that he failed to identify any actual prejudice by reason of the competency evaluation. *Taylor*, 2010 WL 2245599, at *7. And when considering his post-conviction challenge, the Kansas Court of Appeals concluded that res judicata barred reconsideration of the issue because "this court has already ruled that the competency evaluation did not violate Taylor's speedy trial rights and it was not ineffective assistance of counsel to request an evaluation." *Taylor*, 2020 WL 4722823, at *5.

Taylor's federal habeas petition switches justification for his position. He now contends that Pickering was ineffective for not asserting a denial of his Sixth Amendment speedy trial right. Doc. 1 at 5. That he has not previously asserted such a justification matters because the arguments and rights at issue are materially distinct: Kansas's K.S.A. § 22-3402(a) governs Taylor's statutory speedy trial claim, whereas *Barker v. Wingo*, 407 U.S. 514 (1972), would govern a constitutional speedy trial claim. *See also United States v. Margheim*, 770 F.3d 1312, 1317–27 (10th Cir. 2014) (evaluating the defendant's statutory and Sixth Amendment speedy trial claims separately and under distinct standards). That litigation switch is barred. *Cf. Williams v. Williams,* No. 25-3188, 2026 WL 35074, at *2 (D. Kan. Jan. 6, 2026) (concluding that the petitioner had not exhausted his claim concerning his Sixth Amendment speedy trial rights where he only raised statutory speedy trial claims before the Kansas Court of Appeals and then raised his Sixth Amendment speedy trial claim for the first time in his federal habeas petition); *see also Grant v. Royal*, 886 F.3d 874, 891 (10th Cir. 2018) (holding that the ineffective assistance claim was not fairly presented to the state courts because the state and federal ineffective assistance of counsel claims relied on different bases).

**ii**

Nor did Taylor argue on direct appeal or in his state post-conviction motion that Pickering was ineffective for not arguing that Taylor was forced to choose between two constitutional rights. *See generally*

*Taylor*, 2010 WL 2245599; *Taylor*, 2020 WL 4722823. As a result, this claim has not been exhausted. *See Davis v. Sharp*, 943 F.3d 1290, 1296 (10th Cir. 2019) (affirming the district court's conclusion that petitioner's claims were unexhausted because he "never presented such claims in state court, either on direct appeal or in his postconviction application").

Just as with the aforementioned claim against Kerns, both of Taylor's unexhausted claims concerning Pickering face the same anticipatory procedural bar. As noted, Kansas law would preclude those claims or the filing of a second, successive motion. K.S.A. § 60-1507(c), (f)(1)(C); *see also Fontenot*, 4 F.4th at 1024 (holding that an ineffective assistance claim was procedurally defaulted where the state courts would decline to hear it).

Unlike his claim against Kerns, however, Taylor does not invoke either exception to the bar. He offers no cause for failing to raise these arguments in state court, identifies no resulting prejudice, and his actual innocence argument concerns only the uncalled trial witnesses, not Pickering's appellate work. That precludes habeas review. *Fontenot,* 4 F.4th at 1024 (holding that the petitioner's ineffective assistance claim faced an anticipatory procedural bar where the state courts would decline to hear the unexhausted claim and thus the claim was procedurally defaulted for purposes of federal habeas review); *cf. Frost*, 749 F.3d at 1232 (declining to analyze an exception when the prisoner did not assert that it applied).

**B**

Taylor's three remaining arguments were properly exhausted. He argues that his lawyers were ineffective: Kerns for failing to preserve the suppression issues for appeal and Pickering for failing to argue on direct appeal either that the district court erred in ordering a competency exam or that the competency continuance violated his rights under Kansas's speedy trial statute. *See generally* Doc. 1.

The State of Kansas opposes the petition. It argues that Kerns's performance did not prejudice Taylor and that Pickering was not ineffective for failing to challenge either the competency evaluation or the state speedy trial claim. *See generally* Doc. 61.

**1**

Ineffective assistance of trial or appellate counsel is analyzed pursuant to the framework the Supreme Court set out in *Strickland v. Washington*, 466 U.S. 668 (1984); *accord Frederick v. Quick*, 79 F.4th 1090, 1105 (10th Cir. 2023) (applying *Strickland*). Specifically, the habeas petition must show that counsel's performance "fell below an objective standard of reasonableness," and that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687–88.

To show that counsel's performance fell below an objective standard of reasonableness requires something akin to abdication of responsibility. As to trial counsel, the defendant must show "that [trial] counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Similarly, a defendant "must show appellate counsel performed deficiently in failing to raise the particular issue on appeal." *Frederick v. Quick*, 79 F.4th 1090, 1105 (10th Cir. 2023) (quoting *Davis v. Sharp*, 943 F.3d 1290, 1299 (10th Cir. 2019)) (quotations omitted). Appellate counsel need not raise every nonfrivolous issue; winnowing out weaker claims is sound strategy. *Id.* So when the claim is that counsel omitted an issue, the court examines the merits of the omitted issue, and counsel's performance is not deficient if that issue lacks merit. *Id.* This inquiry is "highly deferential and must be made without 'the distorting effects of hindsight.'" *Menzies v. Powell*, 52 F.4th 1178, 1196 (10th Cir. 2022) (quoting *Strickland*, 466 U.S. at 689).

As to the prejudice prong, the law requires a defendant to show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Frederick*, 79 F.4th at 1105 (quoting *Strickland*, 466 U.S. at 694). "In the context of an ineffective assistance of appellate counsel claim, this means the defendant 'must show a reasonable probability that, but for his counsel's unreasonable failure to' raise a particular nonfrivolous issue, 'he would have prevailed on his appeal.'" *Id.* (quoting *Milton v. Miller*, 744 F.3d 660, 669 (10th Cir. 2014) (quoting *Smith v. Robbins*, 528 U.S. 259, 285 (2000))). When the basis for the ineffective assistance claim is failure to raise an issue, the standard for evaluating the omission is the same under either prong: if the omitted issue lacks merit, then counsel's failure to raise it is not prejudicial. *Sumpter*, 61 F.4th at 747 n.3. Courts can address these two prongs in any order, and failure is dispositive under either. *United States v. Kennedy*, 225 F.3d 1187, 1197 (10th

Cir. 2000) ("An ineffective assistance claim may be resolved on either performance or prejudice grounds alone.").

As noted, the Kansas Court of Appeals considered and rejected Taylor's ineffective assistance claims on the merits during his state post-conviction proceedings. This means the *Strickland* and AEDPA deference standards apply in tandem: A petitioner is only entitled to relief if he can show that "all fairminded jurists would agree the state court decision was incorrect." *Frederick*, 79 F.4th at 1106 (quoting *Harrington*, 562 U.S. at 102). In other words, the claim fails if there is any reasonable argument that counsel satisfied *Strickland*. *Id.* (citation omitted).

**2**

Taylor argues that Kerns was constitutionally deficient by failing to preserve his right to challenge the denial of the motion to suppress. Doc. 1 at 6, 18.[4] Kansas argues that Taylor has not and cannot satisfy the prejudice prong of *Strickland*. Doc. 61 at 26.

Under AEDPA, Taylor must establish that all fairminded jurists would agree that the Kansas Court of Appeals erred in its conclusion that Taylor was not prejudiced by Kerns's failure to preserve the suppression issues. *Frederick*, 79 F.4th at 1106 (quoting *Harrington*, 562 U.S. at 102). He has not and cannot do so.

The suppression motion challenged the officers' reasonable suspicion to stop Taylor and the pretrial identification evidence. But neither argument would have been successful on appeal even if Kerns had made contemporaneous objections to preserve the arguments.

Consider first Taylor's reasonable suspicion argument. Taylor asserts that the officers did not have reasonable suspicion to stop him at all because they "admitted that they did not pay attention to dispatch," only focused on some of the descriptive information provided, and one of the officers testified that Taylor was walking normally. Doc. 1 at 6, 16. But reasonable suspicion is a low burden to satisfy, permitting

---

[4] Because Taylor fails to demonstrate prejudice, it is unnecessary to analyze whether Kerns's performance was deficient. *See Byrd v. Workman*, 645 F.3d 1159, 1169 (10th Cir. 2011) (affirming the district court's denial of the defendant's habeas petition where he failed to satisfy one prong of *Strickland*).

officers to make commonsense judgments and inferences about human behavior under the circumstances. *See*, *e.g.*, *Kansas v. Glover*, 589 U.S. 376, 380 (2020). It was easily met: The officers reported that they observed that Taylor matched the description a victim had provided to dispatch, he was near the crime scene, he was "looking back over his shoulder and looking around while walking," and he was sweating through his clothes even though it was around 76 degrees that night. *Taylor*, 2020 WL 4722823, at *3–*4. This amply supports a reasonable suspicion finding. *See, e.g.*, *United States v. Campbell*, 156 F.4th 1019, 1024 (10th Cir. 2025) (concluding that the officers had reasonable suspicion to stop the suspect because he matched the 911 caller's general description, was located near the alleged robbery location, and was not cooperating with the officer's requests). In other words, the argument would have failed even if Kerns had preserved it.

Next consider his identification argument. Taylor takes issue with the victim's identification of him from a photo array. But the totality of the circumstances demonstrates the reliability of the identification. *United States v. Ruiz*, 116 F.4th 1246, 1251 (10th Cir. 2024) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)) ("Reliability is the linchpin in determining the admissibility of identification testimony."); *id.* (citing *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972)) (identifying the relevant reliability factors, including the witness's opportunity to view the perpetrator, degree of attention, accuracy of any prior description, level of certainty, and the time between the crime and the identification). In particular, the victim had an unobstructed view of the intruder's face for several minutes as he stood approximately ten to twelve feet from her bed and had provided relatively consistent and accurate descriptions of the intruder each time she was called to identify him. *See Taylor*, 2020 WL 4722823, at *5 (citing 2010 WL 2245599, at *5). These facts adequately support reliability. *See United States v. Gallegos*, 111 F.4th 1068, 1086 (10th Cir. 2024) (concluding that the victim's identification was sufficiently reliable where the victim had the opportunity to view the assailant and had an unobstructed view of the assailant's face for a short period of time). Again, it was a losing argument even if it had been preserved.

There is no colorable argument that all fair-minded jurists would disagree with the Kansas Court of Appeals' determination that Taylor was not prejudiced by Kerns's failure to preserve his right to challenge the denial of the motion to suppress. That is because, as described, there is no basis to believe that Taylor's suppression motion had any

hope of success on direct appeal even if Kerns had preserved the issue. Accordingly, Taylor was not prejudiced from Kerns's failure to raise the issue. *See, e.g.*, *United States v. Rushin*, 642 F.3d 1299, 1310 (10th Cir. 2011) (noting that the defendant was not prejudiced because he failed to establish "a reasonable probability that the result or outcome of the 'proceeding' to which he was subjected would have differed").

**3**

Taylor argues that Pickering was ineffective in two ways on direct appeal. First, he contends that she should have but did not argue that Lake, one of his many appointed trial attorneys, lacked authority to request a competency evaluation. Doc. 1 at 8. Second, he contends that she failed to argue that his rights under the Kansas statute governing speedy trial had been violated. *Id.* at 5. Neither has merit.

**a**

Taylor first argues that Pickering should have argued on appeal that Lake had no authority to request a competency evaluation because Taylor was pro se at the time. *See* Doc. 1 at 8. Taylor emphasized the premise that he was pro se in his state post-conviction proceedings. The Kansas Court of Appeals rejected that argument. It held that substantial competent evidence supported the district court's finding that Taylor was not pro se when Lake made the request, and it held that Taylor's related challenges to Lake's authority and to the evaluation itself were barred by res judicata because they had been decided on direct appeal. *Taylor*, 2020 WL 4722823, at *5; *see Taylor*, 2010 WL 2245599, at *7. Those rulings enjoy AEDPA deference even though the Kansas Court of Appeals addressed the premise directly rather than through the framework of an ineffective assistance claim against Pickering. *See Grant*, 886 F.3d at 928.

Taylor's petition, to the extent it challenges the post-conviction courts' factual findings, fails to establish the conclusions reached were unreasonable. Under controlling law, a factual finding is only unreasonable if it "plainly misapprehended or misstated the record" that constitutes a material factual issue central to the petitioner's claim. *Frederick*, 79 F.4th at 1104 (quoting *Menzies v. Powell*, 52 F.4th 1178, 1195 (10th Cir. 2022)); 28 U.S.C. § 2254(d)(2) (permitting relief where the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding").

The Kansas Court of Appeals' factual findings were not unreasonable. That court found that substantial competent evidence supported the district court's underlying factual finding. *Taylor,* 2020 WL 4722823, at *5. As to whether Lake was acting as Taylor's lawyer, "the district court relied on a pretrial motions hearing where it ordered Taylor's counsel to remain as his defense counsel—not standby counsel—because Taylor could not decide whether he wanted to represent himself." *Id.* That conclusion is sound. Doc. 62-8 at 3–4; *see also* Doc. 62-29 at 27; *Frederick*, 79 F.4th at 1129 (rejecting Section 2254(d)(2) challenge where the record supported the state court's factual conclusion).

The same holds true concerning the need for a competency examination. The Kansas Court of Appeals pointed to the district court's consideration of the nature of the requests made at the trial court level by and through multiple counsel given Taylor's statements on the record and to his lawyers. *Taylor*, 2010 WL 2245599, at *7. In addition, the Kansas Court of Appeals found that the district court's assessment was supported not only by the record presented in the district court, but also by Taylor's appellate brief, "where he appears to concede that he was unwilling to assist in his own defense." *Taylor*, 2010 WL 2245599, at *7.

Taylor's attempts to undermine the Kansas Court of Appeals' findings are unavailing. He selectively points to different parts of the record for support that he was not pro se or, alternatively, that the competency exam was not warranted. *See, e.g.*, Doc. 62-25 at 12, 24; Doc. 62-28 at 71–72. But the Kansas Court of Appeals' findings were based on a review of pretrial hearings where the district court discussed Taylor's pro se status and its observations throughout the proceedings that caused it to believe that Taylor needed a competency evaluation. Even if the evidence Taylor cites may support his differing view of the proceedings or a more favorable conclusion by another court in the first instance, that is not the test under habeas review. *See* 28 U.S.C. § 2254(d)(2); *Wood v. Allen*, 558 U.S. 290, 301 (2010) (noting a state court's factual determination is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance"). Instead, Taylor's petition fails because the Kansas Court of Appeals' factual findings, on the whole, are amply supported. *Frederick*, 79 F.4th at 1130 (concluding that the petitioner could not show that the OCCA's no-prejudice determination was unreasonable because the finding was supported by other, unchallenged factual findings).

**iii**

Taylor's petition also fails to establish the Kansas Court of Appeals erred in concluding that Pickering's conduct fell below the *Strickland* standard. Because Taylor claims that Pickering omitted an issue, the analysis turns on the merits of the omitted issue such that if the argument concerning Lake's authority lacked merit, Pickering's failure to raise it was neither deficient nor prejudicial. *Sumpter*, 61 F.4th at 747 n.3 (explaining that when an ineffective assistance claim rests on counsel's failure to raise an issue, the court looks to the merits of the omitted issue, and the standard is the same under either *Strickland* prong).

As to the substance of this claim, it would have failed for at least two reasons. First, it rests on a factual premise that the state courts rejected. A habeas petitioner cannot build an argument on facts contrary to those found by the state court unless he rebuts those findings by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and, as explained above, Taylor has not done so. Nor would the premise have fared better on direct appeal, where that finding would have been reviewed only for substantial competent evidence, not reweighed, *State v. Edwards*, 243 P.3d 683, 688 (Kan. 2010), and the Kansas Court of Appeals later held that the standard was met, *Taylor*, 2020 WL 4722823, at *5.

Second, Lake's status was irrelevant because Kansas law permits a district court to order a competency evaluation on its own knowledge and observation, regardless of who requests it, K.S.A. § 22-3302(1) (2007). And that is what the district court did, relying in part on its own observations of Taylor (to say nothing of his litigation conduct contained in the record) when it ordered the evaluation. Doc. 62-8 at 9–10. In other words, the competency evaluation would have occurred either way, rendering Taylor's legal argument meritless. That conclusion dooms his request for habeas relief. *Frederick*, 79 F.4th at 1105 ("If the omitted issue is meritless, [appellate counsel's] omission will not constitute deficient performance."); *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (same). Therefore, the Kansas Court of Appeals' conclusion to that effect did not unreasonably apply *Strickland*. *See Frederick*, 79 F.4th at 1112.

**b**

Taylor also claims that Pickering was ineffective because she did not argue on direct appeal that the district court violated Taylor's

Kansas statutory speedy trial rights. Doc. 1 at 5. This claim fails under *Strickland* because it would have been frivolous.

As with the claim concerning Lake, the analysis turns on the merits of the argument Pickering omitted. If that argument lacked merit, her omission was neither deficient nor prejudicial. *Sumpter*, 61 F.4th at 747 n.3. Taylor's theory is that the time consumed by his competency evaluation should have counted against the State. But under Kansas law, time during which a competency decision is pending never counts against the State. Kan. Stat. Ann. § 22-3402(e)(2); *Edwards*, 243 P.3d at 690–91. The Kansas Court of Appeals rejected the substance of this very argument on direct appeal, concluding that competency proceedings did not prejudice Taylor's statutory speedy trial rights, and it declined to revisit the issue, on res judicata grounds, in his post-conviction appeal. *Taylor*, 2010 WL 2245599, at *7; *Taylor*, 2020 WL 4722823, at *4–*5.

Pickering was therefore not ineffective for declining to make an argument that Kansas law foreclosed. *See Cargle*, 317 F.3d at 1202 ("if the issue is meritless, its omission will not constitute deficient performance"). And because the Kansas Court of Appeals' conclusions to that effect were adjudications on the merits, they enjoy AEDPA deference even though the state court did not frame the issue as an ineffective assistance claim against Pickering. *Grant*, 886 F.3d at 928. A state court that concludes counsel was not deficient for omitting an argument with no realistic chance of success does not unreasonably apply *Strickland*. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (holding state court reasonably concluded counsel was not deficient for abandoning "a claim that stood almost no chance of success").

**C**

Under Rule 11(a) of the Rules Governing Section 2254 Cases, district courts must issue or deny a certificate of appealability when they enter a final order adverse to the applicant. Such a certificate may issue only if Taylor "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For claims resolved on procedural grounds, Taylor must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For claims resolved on the merits, Taylor must show that reasonable jurists could debate whether the

petition should have been resolved differently or that the issues deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Consistent with the reasoning above, Taylor has made neither showing. Accordingly, this Memorandum and Order declines to issue a certificate of appealability.

**III**

For the foregoing reasons, Taylor's Petition for a Writ of Habeas Corpus, Doc. 1, is DENIED. No certificate of appealability will issue.

It is so ordered.

Date: September 16, 2026

s/ Toby Crouse
Toby Crouse
United States District Judge